UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60310-Civ-GAYLES
MAGISTRATE JUDGE P.A. WHITE

EUGENE SUGGS,

 Petitioner,

v.            REPORT OF
             MAGISTRATE JUDGE

FLORIDA PAROLE COMMISSION,

 Respondent.

_____/

## I. Introduction

 Eugene Suggs, a state prisoner confined at Dade Correctional Institution, Florida City, Florida, has filed a pro se petition for writ of habeas corpus challenging the Florida Parole Commission's revocation of his conditional release supervision, and his subsequent confinement.

 This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2241 Cases in the United States District Courts.

 For its consideration of this petition (DE#1), the Court has the response with multiple exhibits from the Florida Parole Commission (DE#8) to this court's order to show cause, and the petitioner's reply thereto (DE#11).

## II. Procedural History

 The pertinent procedural history of this case is as follows. Petitioner has a long incarcerative history that began with a 1974

armed robbery conviction, entered in Broward County Circuit Court, for which he was sentenced to 20 years in prison.[1] He was next convicted in 1986 for resisting an officer with violence in Broward County Circuit Court, case no. 86-06224, and sentenced to a total of 1 year and 1 day in prison. In 1987, he was convicted of aggravated battery, shooting or throwing a deadly missile into a building or vehicle, and felon in possession of a firearm, in Broward County Circuit Court, case no. 87-08124, and sentenced to a total of 5 years and 6 months in prison. Finally, in 1996 petitioner was convicted for second degree murder and sentenced to 22 years in prison, in Broward County Circuit Court, case no. 93-10611. (DE#8:Ex.A).

On May 17, 2004, petitioner was first granted conditional release as to the 1996 second degree murder conviction referenced above. See Florida Parole Commission Certificate of Conditional Release and Terms and Conditions of Supervision. (DE#8:Ex.B5-B9). Petitioner was instructed as to the various terms and conditions of conditional release on that date, but he refused to execute the form, as noticed by the witness who executed the form. (Id.:B8-B9). Petitioner should have remained on conditional release supervision until June 13, 2015. (Id:B2,B5).

However, on September 8, 2005, petitioner violated the terms of his conditional release by not complying with his mandatory curfew which required that he be confined to his residence from the hours of 7:00 p.m. to 7:00 a.m., except for work/treatment purposes. (DE#8:Ex.C1). As a result, on September 13, 2005, a Violation Report was issued charging petitioner with violating the terms of his conditional release supervision. (Id.). A Warrant was

---

[1] The undersigned takes judicial notice of the Florida Department of Corrections, Corrections Offender Network, Inmate Population Information Detail, located on-line at www.dc.state.fl.us. See Fed.R.Evid. 201.

issued, directing that petitioner be taken into custody and detained for a violation hearing. (<u>Id</u>.:C3).

On October 20, 2005, a conditional release hearing was held, at which time it was determined that petitioner was ineligible for release on his own recognizance based on his conditional release violation. (<u>Id</u>.:C4-C5). At that time, petitioner was advised of, but waived his right to be represented by an attorney, and admitted to violation of the mandatory curfew condition of his release supervision. (<u>See</u> DE#8:Ex.C6-Conditional Release Violation Hearing Worksheet). At that hearing, exhibits were introduced, which included the certificate of conditional release, the September 15, 2005 warrant, and the September 13, 2005 violation report. (<u>Id</u>.:C7). No direct testimony was taken due to the petitioner's admission of guilt as to the charged violation. (<u>Id</u>.:C7,C11).

Regarding mitigating circumstances, petitioner stated he was not feeling well, and left the residence to go to Walgreen's to purchase medicine. (<u>Id</u>.:C8). He claims his former girlfriend, Andrea Rolle, lied about his whereabouts at the time. (<u>Id</u>.). When asked why Andrea had not gone out to purchase petitioner's medication, petitioner explained that they were in a fight, and she would have refused to go. (<u>Id</u>.). He also stated he did not keep the receipt for the purchase he made that day. (<u>Id</u>.). When given an opportunity to provide the examiner with a final statement, petitioner responded by challenging the amount of time he had already served, and added that the imposition of a curfew was unfair as it limited his employment opportunities. (<u>Id</u>.).

At the conclusion of the hearing, the parole examiner recommended that the petitioner's conditional release be revoked, given petitioner's own admission that he violated condition 19 of

the terms of his conditional release regarding his curfew, showed
no remorse, nor did he accept responsibility for his actions.
(<u>Id</u>.:C6-C7,C9-C10).

On December 14, 2005, a Revocation of Conditional Release
Order was entered by the Florida Parole Commission, finding that
petitioner had violated Special Condition 19, concerning mandatory
curfew, on September 8, 2005 at 8:45 p.m. The order directed that
petitioner be returned to the Florida Department of Corrections
("FDOC") to remain until completion of his sentence or until
further order of the Parole Commission. (<u>Id</u>.:C16). The FDOC
Corrections Offender Network, on-line database reveals petitioner
was received in-custody on November 2, 2005.

Petitioner then filed a petition for writ of mandamus with the
Leon County Circuit Court, challenging the structure of his
sentence upon revocation of his conditional release supervision, in
terms of the gain time initially awarded, then forfeited, and the
lack of street time credit. By lengthy, detailed order entered on
September 23, 2009, the trial court denied the mandamus petition,
finding the FDOC had properly applied the correct amount of basic
gain time to petitioner's conditional release supervision, further
declaring that the amount of forfeited gain time was also
accurately calculated. (DE#8:Ex.D). The court also found petitioner
was not entitled street time credit. (<u>Id</u>.). Certiorari review was
subsequently *per curiam* denied on the merits by the Florida First
District Court of Appeal on January 12, 2011. (<u>Id</u>.).

Meanwhile, on June 5, 2012, the petitioner once again became
eligible for conditional release. (DE#8:Ex.E). As a result, on July
24, 2012, petitioner was granted conditional release as to the 1996
second degree murder conviction referenced above. <u>See</u> Florida

Parole Commission Certificate of Conditional Release and Terms and Conditions of Supervision entered August 20, 2012. (DE#8:Ex.E). Petitioner was instructed as to the various terms and conditions of conditional release on that date, and executed the Certificate, acknowledging receipt of the reporting instructions, terms and standard conditions of release, along with the special conditions of release. (Id.:E5-E8).

On October 28, 2012, petitioner again violated the terms of his conditional release by not complying with his mandatory curfew which required that he be confined to his residence from the hours of 7:00 p.m. to 7:00 a.m., except for work/treatment purposes. (DE#8:Ex.F1). On October 29, 2012, petitioner left his probation officer a message regarding the curfew violation, stating that he had been at home, in the backyard, with his dog. (Id.:F2). Nevertheless, on October 31, 2012, a Violation Report was issued charging petitioner with violating the terms of his conditional release supervision. (Id.). A Warrant was issued, directing that petitioner be taken into custody and detained for a violation hearing. (Id.:F4).

On January 8, 2013, a conditional release hearing was held, at which time it was determined that petitioner was ineligible for release on his own recognizance based on his conditional release violation. (Id.:G1-G2). At that time, petitioner was advised of, and requested, but was denied the right to have an attorney appointed. (Id.:G8). At the hearing exhibits were introduced, which included the certificate of conditional release, warrant, violation report, and denial of appointment of counsel. (Id.). Testimony was taken from the petitioner, the petitioner's mother-Evelyn Suggs, the petitioner's nephew-Brian Keith Smith, and Mechelle Campbell-the FDOC Probation Specialist. (Id.:G10-G11).

Petitioner testified that on the date and time of the charged violation he had been outside in his backyard playing with his dog when Probation Specialist Campbell came by the house. Petitioner explained that when he came back inside, his mother told him that Campbell had come by. (<u>Id</u>.:G10). As a result, he tried calling her on the phone, but could not "get through" to leave a message because it kept repeating "sorry, goodbye." (<u>Id</u>.). When questioned by the examiner, petitioner stated that his mother would not have been able to see the entire backyard from the back door. He states his mother would have been required to either go outside or possibly look through his bedroom window to see that he was in an area of the backyard not visible from the back door. (<u>Id</u>.).

Probation Specialist Campbell testified that she was in charge of supervising petitioner, and as such, on October 28th, 2012, at 9:39 p.m., she went to petitioner's residence. (<u>Id</u>.:G10). As she was pulling up, she observed a grey, Ford F150 truck leaving the residence, and believed, although she could not state for certain, that the individual in the truck was the petitioner. (<u>Id</u>.). When Campbell knocked on the door to the residence and petitioner's mother answered, she asked to speak with petitioner. (<u>Id</u>.). Petitioner's mother explained that petitioner was talking on the phone. However, when petitioner's mother went to the den, the petitioner's bedroom, and then looked out the door to the carport area, she advised Campbell that the petitioner was not at home. (<u>Id</u>.). Campbell further stated she remained at petitioner's residence for approximately four to five minutes before she left, and denied receiving any messages on her cell phone or office phone from petitioner that day. (<u>Id</u>.). Before leaving, however, she instructed petitioner's mother to advise the petitioner that she had come by for a curfew check. (<u>Id</u>.). Campbell did confirm, however, that petitioner called her the following day, October 29,

2012, leaving several voicemail messages, stating he had been home in the backyard with his dog. (Id.).

Evelyn Suggs, petitioner's mother, testified that she was in the kitchen, talking on the phone, when the petitioner went into the garage. (Id.:G11). Thereafter, Campbell knocked on the door, asking whether petitioner was home. (Id.). Evelyn Suggs testified she advised Campbell that petitioner was outside in the garage. (Id.). Evelyn Suggs explained, however, that when she went to the garage door, she called out to petitioner, but he did not answer. (Id.). As a result, she told Campbell petitioner was not at home. (Id.). Petitioner's mother further testified that petitioner arrived home shortly after Campbell left. (Id.). When petitioner was told that Campbell had been by, he thought his mother was "teasing" him. (Id.). Evelyn Suggs also testified she looked in petitioner's bedroom and den, but he was not there. (Id.). She believes that when her son returned, he had indicated to her that he had gone out to get something to eat, but never heard him say anything about playing with the dog in the backyard. (Id.).

Brian Keith Smith, the petitioner's nephew, testified his friend owns a Ford, F150 truck. (Id.). On the day in question, Smith explained he and his friend left petitioner's residence between 9:30 and 9:45 p.m. (Id.). When questioned regarding petitioner's whereabouts that evening, Smith testified he did not know where petitioner was when Campbell came by the residence, since Smith had already left. (Id.).

At the conclusion of the hearing, the parole examiner found petitioner guilty of violating Special Condition 15 regarding his mandatory curfew on October 28, 2012. (Id.). The parole examiner based its finding on the testimonies of Campbell and petitioner's

mother. (Id.). As a result, the parole examiner recommended that the petitioner's conditional release be revoked, given the finding of guilt, and petitioner's failure to take responsibility for his actions. (Id.:G11-G12).

On February 20, 2013, a Revocation of Conditional Release Order was entered by the Florida Parole Commission, finding that petitioner had violated Special Condition 15, concerning mandatory curfew, on October 28, 2012, at approximately 9:39 p.m. (DE#8:Ex.H1). The order directed that petitioner be returned to the FDOC to remain until completion of his sentence or until further order of the Parole Commission. (Id.). The FDOC Corrections Offender Network, on-line database reveals petitioner was received in-custody on January 22, 2013, where he remains to date.

Petitioner challenged the Parole Commission's findings by filing a petition for writ of habeas corpus, which was denied by the trial court by written order entered on July 3, 2013.[2] (DE#8:Ex.I1-I21). Next, petitioner filed a petition for writ of certiorari with the Third District Court of Appeal, which was denied by order entered on September 6, 2013. (DE#8:Ex.J1-J15). Rehearing was denied on October 4, 2013, and the case disposed of without a mandate on October 21, 2013. (Id.).

The petitioner then came to this court, filing the instant federal petition on February 5, 2014. (DE#1).[3]

III. Discussion

---

[2]See DE#8:Ex.I-Trial Court Docket, Seq. No. 1,14.

[3]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

As raised in his state habeas corpus petition, petitioner challenges the Florida Parole Commission's 2012 revocation of his conditional release supervision, and his ensuing confinement.

Since the petitioner does not challenge the constitutionality of a conviction, only his confinement, this petition here has been appropriately opened as one brought pursuant to 28 U.S.C. §2241. See Preiser, Correction Commissioner v. Rodriquez, 411 U.S. 475 (1973). Nevertheless, the petition is also governed by and subject to the rules and restrictions found in 28 U.S.C. §2254. See Medberry v. Crosby, 351 F.3d 1049 (11th Cir. 2003)(holding that for those imprisoned pursuant to a State court judgment, the habeas corpus remedy is authorized by §2241, but also subject to §2254 and all of its attendant restrictions). See also Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004)(reiterating the holding in Medberry and applying it to a petitioner in custody pursuant to a state court judgment who was challenging a decision of the parole board), cert. den'd, 543 U.S. 1063 (2005).

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), signed into law on April 24, 1996, amended the statutes governing federal habeas relief for state prisoners. Because petitioner filed his petition after AEDPA's enactment, its provisions are applicable thereto. See Wilcox v. Florida Dep't of Corrs., 158 F.3d 1209, 1210 (11 Cir. 1998), cert. denied, 531 U.S. 840 (2000).

A.   Timeliness

The respondent correctly does not challenge this petition as untimely filed. See 28 U.S.C. §2244(d)(1)-(2).

9

B.   Exhaustion

        The respondent also does not challenge that the claim raised
herein has been exhausted in the state forum, and is thus ripe for
federal habeas corpus review. An applicant's federal writ of habeas
corpus will not be granted unless the applicant exhausted his state
court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented
to the highest court of the state to satisfy the exhaustion of
state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S.
838 (1999);   Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir.
1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert.
denied, 460 U.S. 1056 (1983). A petitioner is required to present
his claims to the state courts such that they are permitted the
"opportunity to apply controlling legal principles to the facts
bearing upon [his] constitutional claim." Picard v. Connor, 404
U.S. 270-275-77 (1971).

        In Florida, to exhaust challenges to the revocation of parole
or, in this case, conditional release, a petitioner must first file
a petition for writ of habeas corpus filed in the appropriate trial
court and then an appeal from the order denying the petition for
writ of habeas corpus. See Heard v. Florida Parole Comm'n, 811
So.2d 808 (Fla. 1 DCA 2002); Brown v. State, 738 So.2d 500, 502
(Fla. 5 DCA 1999)(holding that Florida appellate courts treat as
petitions for writ of certiorari all appeals of denied petitions
for writ of habeas corpus challenging Parole Commission's order
revoking parole); Sheley v. Florida Parole Comm'n, 720 So.2d 216
(Fla. 1998); Mabrey v. Florida Parole Comm'n, 858 So.2d 1176, 1181
(Fla. 2 DCA 2003) see also, Fla.R.App.P. 9.030.

        Further, the decision by the state court must have been "on
the merits," for the claims raised therein to have been properly

exhausted. See Allen v. Zavaras, 568 F.3d 1197 (10th Cir. 2009); Greene v. Lambert, 288 F.3d 1081, 1986 (9th Cir. 2002); McQuown v. McCartney, 795 F.2d 807, 809 (9th Cir. 1986)(Summary denial of hearing on procedural grounds is not a decision on the merits of petitioner's federal claims for exhaustion purposes).

It should further be noted that, under Florida law, an unelaborated denial in a writ petition is not considered a decision on the merits for *res judicata* or collateral estoppel purposes and does not bar the litigant from subsequently filing the same claim. Topps v. State, 865 So.2d 1253, 1258 (Fla. 2004)(unelaborated orders denying relief in connection with extraordinary writ petitioner issued by Florida Courts not deemed decision on the merits, unless court includes in its order a simple phrase such as "with prejudice" or "on the merits".).

Review of the record provided by the Florida Parole Commission confirms that petitioner has properly exhausted his state court remedies. Thus, the petition is ripe for federal review.

C. Not Cognizable/Merits

The Florida Parole Commission, however, correctly argues that petitioner's challenge to the revocation of his conditional release supervision and then the resultant confinement are issues of state law, rendering the challenges not cognizable in this federal habeas corpus proceeding. The respondent has, in the alternative, addressed the issues on the merits. It is beyond dispute that federal habeas corpus review encompasses errors of constitutional magnitude. 28 U.S.C. §2254(a).[4] See also 28 U.S.C. §2241(c)(3).

---

[4]The terms of 28 U.S.C. §2254(a) provide that a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

Thus, the due process challenge raised in this petition is clearly cognizable in a federal habeas corpus proceeding, and the respondent's argument to the contrary is meritless. See Morrissey v. Brewer, 408 U.S. 471 (1972).

When reviewing the arguments raised on the merits in this federal habeas corpus petition, the provisions of the AEDPA provide that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. §2254(d)(1), (2). See Williams v. Taylor, 529 U.S. 362, 405-06 (2000).[5] In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009); Fugate v. Head, 261 F.3d 1206, 1215-16 (11

---

in custody in violation of the Constitution or laws or treaties of the United States.

    [5]A state court decision is "contrary to" clearly established federal law if a state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision amounts to an unreasonable application of federal law if the state court (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular prisoner's case," or (2) "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Cir. 2001).[6] The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See Early v. Packer</u>, 537 U.S. 3, 8 (2002). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. <u>Id</u>. Further, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, 553 U.S. 1007 (2008).

D.   <u>Merits</u>

Petitioner claims that his due process rights were violated by the parole examiner during the hearing on his violation of conditional release supervision. Petitioner claims the Florida Parole Commission provided no direct evidence that he violated his conditional release on October 28, 2012. (DE#1:4-5). He claims the greater weight of evidence at the violation hearing failed to prove

---

[6]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002). <u>See also</u> <u>Hawkins v. Alabama</u>, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on federal court authority).

that he willfully and substantially violated Special Condition 15 of the Conditional Release Supervision Order. (Id.).

In 1988, the Florida Legislature enacted the Conditional Release Program Act. See Section 947.1405 Fla.Stat. (West 1988). Conditional release is administered by the Florida Parole Commission and is a "post-prison supervision program for certain types of offenders that the legislature has determined to be in need of further supervision after release." Rivera v. Singletary, 707 So.2d 326 1998 (Fla. 1998). The legislature granted the Florida Parole Commission the authority and discretion to impose any special conditions of supervision the Commission determines are warranted in a particular case. See Fla.Stat. §947.1405(6). As with other supervised release programs like parole and control release, the Commission has broad authority to determine issues surrounding revocations of release. Rivera, supra. See also Lincoln v. Florida Parole Commission, 643 So.2d 668 (Fla. 2 DCA 1994).

It is first noted that there is no constitutional right to conditional release before expiration of a valid sentence. See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, if released, the loss of liberty necessitated in revocation proceedings requires that releasees be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Thus, persons already at liberty on parole, or other type of release, have a conditional liberty interest protected by the Fourteenth Amendment of the Constitution entitling them to certain minimum due process requirements during revocation proceedings.[7] Morrissey, 408

_____

[7]Specifically, Morrissey v. Brewer, 408 U.S. 471, 489 (1972) held that persons already at liberty on parole have a conditional liberty interest protected by the Fourteenth Amendment of the Constitution entitling them to the following minimum due process requirements during parole revocation proceedings:

14

U.S. at 489. In Florida, revocation hearings are governed by the same due process considerations. <u>See</u> <u>Gillard v. State</u>, 827 So.2d 316 (Fla. 1 DCA 2002)(<u>citing</u> <u>Morrissey</u>, 408 U.S. 471 (1972)).

Petitioner is not entitled to relief on his claims challenging the decision to place him on conditional release and then the resultant revocation thereof. First, the Certificate for Conditional Release required petitioner to comply with certain conditions, and to not violate any laws or ordinances. Review of the record provided by the Florida Parole Commission demonstrates that before the final revocation hearing, petitioner was given proper notice of the charges against him and all the rights to which he was entitled in the revocation proceedings. Petitioner requested a final violation hearing, and testified at the final hearing. Likewise, testimony was taken from a probation specialist, and documents admitted. Petitioner's mother and nephew also testified at that proceeding. Petitioner was afforded the opportunity to confront and cross-examine the witness who had appeared and examine all documentary evidence. Further, petitioner testified in his own defense, stating that he had not willfully violated the terms and conditions of his release, explaining that he was in the backyard of the residence playing with his dog when the probation specialist came by the house.

Moreover, it is clear that petitioner received all procedural process to which he was due in connection with the revocation proceedings. His revocation proceedings were fundamentally fair, and he therefore suffered no constitutional violation. <u>See</u> <u>Gagnon</u>

---

(1) written notice of the claimed violations of parole; (2) disclosure of the evidence against the parolee; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body such as a parole board; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. <u>Id</u>. at 489.

v. Scarpelli, 411 U.S. at 781; Morrissey v. Brewer, 408 U.S. at 482. It is noted that a revocation proceeding is not a criminal trial. All that is required for revocation is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of his release. See Mack v. McCune, 551 F.2d 251, 254 (10 Cir. 1977). A criminal prosecution is governed by the reasonable doubt standard, while the state's burden of proof in a revocation proceeding is considerably less. The two are therefore different. See Villareal v. United States Parole Commission, 985 F.2d 835, 839 (5 Cir. 1993).

In Florida, to meet its burden in a violation of supervised release proceeding, the state need only demonstrate by a preponderance of the evidence that the defendant committed the subject offense. See Miller v. State, 661 So.2d 353, 354 (Fla. 4 DCA 1995). As that is a lesser standard than is required to prove the criminal charge, a releasee's term of release may be revoked regardless whether he was ever charged or convicted of any particular new offense. See Mempa v. Rhay, 389 U.S. 128 (1967)(holding that revocation of probation may be based on the alleged commission of offenses for which the accused is never tried); United States v. Jolibois, 294 F.3d 1110, 1114 (9 Cir. 2002)(upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct). See also State v. Jenkins, 762 So.2d 535, 536 (Fla. 4 DCA 2000)(holding that a new criminal offense can constitute a probation violation even if nolle prossed by the state). A court at a revocation proceeding must conclude from the weight of the evidence only that a substantial violation occurred. See Wheeler v. State, 344 So.2d 630 (Fla. 2 DCA 1977).

In this case, the competent evidence admitted at the

16

revocation hearing, which includes direct evidence in the form of testimony offered by Correctional Probation Specialist Campbell, testimony offered by petitioner's mother, and documents submitted in evidence, clearly provided sufficient factual support for the finding that petitioner had violated one of the conditions of his conditional release (i.e., his mandatory curfew). Only support of a violation of a single condition of the terms of release is needed for revocation to be upheld. See United States v. McCormick, 54 F.3d 214, 219 n.3 (5 Cir.), cert. denied, 516 U.S. 902 (1995)(when reviewing decision to revoke supervised release based on several alleged violations, record need only support a violation of a single condition of release in order to be upheld by appellate court); Frick v. Quinlan, 631 F.2d 37, 39 (5 Cir. 1980)(same). See also Jones v. State, 678 So.2d 890, 893 (Fla. 4 DCA 1996)(holding that evidence supporting one substantive violation supplied a sufficient factual basis for revocation of probation). Thus, there was sufficient competent evidence to revoke petitioner's conditional release. See Brecht v. Abrahamson, 507 U.S. 619 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946). Revocation was warranted.[8]

    In making the subject findings, the Examiner implicitly, if not explicitly, found the testimonies of Correctional Probation Specialist Campbell and petitioner's mother credible, while rejecting petitioner's testimony, at least in part, as incredible. The Parole Commission clearly accepted these findings, as it

---

    [8]The federal principles in this area are similar. See, e.g. United States v. Ross, 9 F.3d 1182 (7 Cir. 1993)(although a probationer has a right to invoke his constitutional rights at a probation hearing, he does not have the additional right to avoid the express conditions upon which he was granted probation based on those privileges; he must make a choice, and if he is to enjoy the advantages of supervised release, he must comply with any lawfully imposed conditions of probation).

generally must,[9] and agreed with the examiner's recommendation that revocation was warranted under the circumstances here. Accordingly, the state courts properly upheld the revocation.[10]

Although petitioner is understandably displeased with the outcome of the revocation proceedings, it is apparent from review of the record as a whole that the resultant confinement was solely based upon petitioner's unwillingness or inability to conform to restrictions imposed by his term of conditional release. Thus, for the revocation of his release and the following incarceration, petitioner has no one to blame but himself; it was his own doing. See, e.g., United States v. Ross, 9 F.3d 1182 (7 Cir.

---

[9]In Florida, the Florida Parole Commission must make its decision based on the factual findings of its authorized representative, the hearing examiner. The Commission cannot disregard a hearing examiner's factual findings and substitute its own, where the hearing examiner's findings are supported by competent, substantial evidence. See Tedder v. Florida Parole Commission, 842 So.2d 1022 (Fla. 1 DCA 2003). See also Mabrey v. Florida Parole Commission, 858 So.2d 1176, 1183 (Fla. 2 DCA 2003); Merritt v. Crosby, 893 So.2d 598, 599 (Fla. 1t DCA 2005)("As we explained in Tedder v. Florida Parole Commission, (citation omitted), the Parole Commission is not at liberty to reweigh the evidence considered by the hearing examiner in order to find a violation where the examiner's finding to the contrary is supported by competent, substantial evidence.") Further, it is the function of the hearing examiner to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence. Tedder, 842 So.2d at 1025, quoting, Heifetz v. Dep't of Bus. Reg., 475 So.2d 1277, 1281 (Fla. 1 DCA 1985). If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other. Id.

[10]As indicated, the state court's factual findings are generally entitled to a presumption of correctness and may be ignored only if the petitioner shows by clear and convincing evidence that the state court's determination was not fairly supported by the record. 28 U.S.C. §2254(e)(1). See Bui v. Haley, 321 F.3d 1304, 1312 (11 Cir. 2003). See also Griffin v. Wainwright, 760 F.2d 1505, 1511 (11 Cir. 1985)(quoting pre-AEDPA § 2254(d)). This principle holds true for both explicit and implicit findings of fact by a state court. See Green v. Johnson, 160 F.3d 1029, 1045 (5 Cir. 1998), cert. denied, 525 U.S. 1174 (1999). Accordingly, if it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." Marshall v. Lonberger, 459 U.S. 422, 433 (1983), citing, LaVallee v. Delle Rose, 410 U.S. 690 (1973). Review of the record yields no suggestion that the appellate court' denial of the claims are not supported by the record or were otherwise deficient.

18

1993)(although a probationer has a right to invoke his constitutional rights at a probation hearing, he does not have the additional right to avoid the express conditions upon which he was granted probation based on those privileges; he must make a choice, and if he is to enjoy the advantages of supervised release, he must comply with any lawfully imposed conditions of probation).

Accordingly, the denial of petitioner's claims for relief from the Florida Parole Commission's decision to revoke his conditional release supervision, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[11] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002).

IV. Certificate of Appealability

_____

[11]The appellate court's decision affirming the trial court's ruling in the state habeas corpus proceeding constitutes an "adjudication on the merits," and is thus entitled to deference in this habeas corpus proceeding even though the state court did not issue an opinion providing any discussion with respect to the claims. Wright v. Secretary for Dept. of Corrections,278 F.3d 1245 (11 Cir. 2002), cert. denied, 538 U.S. 906 (2003). German is only entitled to relief if the state appellate court's rejection of his claims was directly contrary to, or was an unreasonable application of, clearly established federal law. Id. at 1253-56. See also Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decision affirming the denial of Perez's state habeas corpus petition on the subject issues was not unreasonable, and he is therefore not entitled to relief in this federal proceeding.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)(citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the undersigned finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability should be denied. See 28 U.S.C. §2253(c)(2).

## V. Conclusion

It is therefore recommended that this petition for writ of habeas corpus challenging the Florida Parole Commission's revocation of petitioner's conditional supervised release be denied, that no certified of appealability issue, and that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 2nd day of December, 2014.

UNITED STATES MAGISTRATE JUDGE

20

cc:   Eugene Suggs, <u>Pro Se</u>
      DC#44003
      Dade Correctional Institution
      Inmate Mail/Parcels
      19000 S.W. 377th Street
      Florida City, FL 33034

      Sarah J. Rumph, Gen'l Counsel
      Florida Parole Commission
      4070 Esplanade Way
      Tallahassee, FL 32399-2450